### HARRIS et al. v. UNITED STATES.
### THOMAS et al. v. UNITED STATES.
### ELLIS v. UNITED STATES.
#### Nos. 4570–4572.

United States Court of Appeals
Tenth Circuit.

July 3, 1953.

Rehearing Denied Aug. 5, 1953.

766

Charles R. Nesbitt, Oklahoma City, Okl., and Reuel W. Little, Madill, Okl., for appellants.

Benjamin Forman, Washington, D. C., for appellee (Warren E. Burger, Asst. Atty. Gen., Edwin Langley, U. S. Atty., Muskogee, Okl., and Paul A. Sweeney, Atty., Department of Justice, Washington, D. C., on the brief).

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellants filed separate actions against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) and § 1346(a), for damages to their cotton and peanut crops resulting from spraying operations conducted by the United States on its adjoining property. The actions were consolidated for trial and these appeals are from judgments for the United States.

The United States Fish and Wildlife Service and the United States Corps of Engineers owned approximately 500 acres of land in separate but adjoining tracts near Lake Texoma and the Washita River. This land was covered with a dense growth of willow trees which were choking out vegetation deemed suitable for wildlife, thereby defeating the conservation program of the Fish and Wildlife Service. And the willows in the marshy areas controlled by the United States Corps of Engineers prevented the normal control of malaria mosquitoes.

Confronted with this problem, officials of the two government agencies jointly decided to destroy the willows by the use of a chemical herbicide known as 2,4–D mixed in a diesel oil base to be sprayed over the infested area from an airplane. The actual spraying of the herbicide was conducted by a pilot-biologist of the United States Fish and Wildlife Service during a period from July 29 to August 7, 1949.

Drifting herbicide from the spraying operations damaged the growing cotton and peanut crops on the adjoining lands of the Appellants, and Appellants seek to fasten tort liability upon the United States under § 1346(b) of the Federal Tort Claims Act on two theories: (1) negligence; and (2) absolute liability.

The trial court held first that the decision of the Wildlife Service and the Corps of Engineers to destroy the willows by the use of the herbicide 2,4–D sprayed from an airplane involved a discretionary function as distinguished from a routine or ministerial act, and that the actual spraying of the herbicide by the pilot-biologist in an airplane properly equipped for the work, was done in a careful, prudent and non-negligent manner; that the drifting of the chemical causing the damage to adjoining crops was unpreventable.

From these findings the court concluded that the acts of the government complained of constituted the exercise of a discretionary function within the meaning of 28 U.S.C.A. § 2680(a) of the Tort Claims Act, which, inter alia excludes from the provisions of the Act any claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

We can find no valid distinction between the decision to destroy the willows and eradicate the mosquitoes by the use of 2, 4–D sprayed from an airplane and the decision to manufacture, bag, label and ship

fertilizer in the Dalehite v. United States case, 346 U.S. 15, 73 S.Ct. 956. Moreover, if the operational details can be said to be outside the area of discretionary functions, the trial court's finding of non-negligence forecloses liability for any negligent or wrongful act of a government employee. And, since under the doctrine of the Dalehite case, some act of misfeasance or nonfeasance is essential to government liability under the Tort Claims Act, there can be no liability without fault.

It is said in the alternative that the spraying operations amounted to a taking of private property for public use for which compensation was payable under the Fifth Amendment to the Federal Constitution, and that the court had jurisdiction of the claim under 28 U.S.C.A. § 1346(a)(2) as one founded upon the Constitution. And see United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206.

The trial court held that the one isolated spraying operation was legally insufficient to constitute a taking of the crops within the meaning of the Fifth Amendment of the Constitution and to confer jurisdiction under 1346(a)(2).

Although the Appellants invoke the Fifth Amendment to the Federal Constitution to impose liability without fault for the damages complained of, they cite and rely upon Oklahoma cases construing Art. 2, § 23 of the Oklahoma Constitution prohibiting the taking or damaging of private property for private use with or without compensation and Art. 2, § 24 of the Oklahoma Constitution prohibiting the taking or damaging of private property for public use without the payment of just compensation.

It is true that Oklahoma courts, as well as courts in other states with similar constitutional provisions, have construed such provisions as imposing liability for the taking or damaging of private property for public purposes. Liability Without Fault in Oklahoma, Henry H. Foster, Jr. and W. Page Keeton, Oklahoma Law Review, Vol. 3, No. 2, May, 1950; 2 A.L.R.2d 677; British-American Oil Producing Co. v. McClain, 191 Okl. 40, 126 P.2d 530; and other cases cited in the law review article.

But the acts complained of here were performed by the federal government, and the liability, if any imposed, is by virtue of the federal constitution, and state notions of constitutional liability are relevant only insofar as they may be persuasive in the judicial process. Moreover, it should be noted that, unlike many state constitutions, the federal constitution provides only for the payment of just compensation for a taking of private property for public use, and damages to property not taken are compensable only as a consequence of or incidental to an actual taking. Stephenson Brick Co. v. U. S. ex rel. and for Use of Tennessee Valley Authority, 5 Cir., 110 F. 2d 360; Sharpe v. U. S., 112 F. 893, 50 C.C.A. 597, 57 L.R.A. 932, affirmed Sharpe v. U. S., 191 U.S. 341, 24 S.Ct. 114, 48 L. Ed. 211.

A compensable taking under the federal constitution, like the phrase "just compensation" is not capable of precise definition. And the adjudicated cases have steered a rather uneven course between a tortious act for which the sovereign is immune except insofar as it has expressly consented to be liable, and those acts amounting to an imposition of a servitude for which the constitution implies a promise to justly compensate. Generally it is held that a single destructive act without a deliberate intent to assert or acquire a proprietary interest or dominion is tortious and within the rule of immunity. Bedford v. United States, 192 U.S. 217, 24 S.Ct. 238, 48 L.Ed. 414.

To illustrate, a single blasting operation by the United States in a navigable stream causing damage to private property was held to be no more than a remedyless tort in Keokuk & Hamilton Bridge Company v. United States, 260 U.S. 125, 43 S.Ct. 37, 67 L.Ed. 165. In Peabody v. United States, 231 U.S. 530, 34 S.Ct. 159, 58 L.Ed. 351, the United States maintained a fort with guns capable of firing over private lands used for resort purposes. At the time of the bringing of the suit only two guns had been fired for testing purposes resulting in damages to private property. It did not appear that there was any intention on the part of the

768

government to fire any of its guns over or across the lands at any time in the future except for defense purposes, but the apprehension that the guns would be fired depreciated the value of the resort facilities. The court held that the menace created by the presence of the guns did not impose a servitude or constitute an appropriation or taking of private property for public use. And again, in Portsmouth Harbor Land & Hotel Company v. United States, 250 U.S. 1, 39 S.Ct. 399, 63 L.Ed. 809, subsequent gun fire over the same land was held not to justify a different conclusion. But repeated and cumulated firing over the same lands was held to amount to the imposition of a servitude and a taking in Portsmouth Harbor Land & Hotel Company v. United States, 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287.

Following the philosophy of the Portsmouth case, frequent and regular flights of army and navy aircraft over private property at low altitudes were held to impose a servitude and a taking in United States v. Causby, 328 U.S. 256, 68 S.Ct. 1062, 90 L. Ed. 1206. On remand, Causby v. United States, 75 F.Supp. 262, 263, 109 Ct.Cl. 768, for the purpose of determining whether the easement acquired was temporary or permanent and for the determination of the damages suffered by reason of the taking, the court of claims included in the award the value of chickens "destroyed and thereby taken." The court could see no difference in the destruction of personal and real property in the sense of a constitutional taking "where in either case the owner is deprived of its use, not by a negligent act, but as a natural consequence of the deliberate, intended exercise of an asserted power." And this is undoubtedly true where the destruction of or damage to the personal property is the consequence of a deliberate, continuous or repeated act amounting to a constitutional taking.

█ But we do not understand that a single isolated and unintentional act of the United States resulting in damage or destruction of personal property amounts to a taking in a constitutional sense. It is, we think, rather a tortious act for which the government is only consensually liable.

We agree with the trial court that the single act of the spraying operation fell short of a taking within the meaning of the Fifth Amendment. If the result leaves a wrong by the sovereign without a judicial remedy, the deficiency lies in the limited scope of the government's tort liability. It does not justify the extension of the contractual liability of the government beyond its intended scope.

The judgments are affirmed.