John E. **BENNETT**, Phillip Abney, Mrs. Gerald L. Cox, Mary B. McBryde, Wynona P. Frost, Frances West, Mrs. Marshall Greenman, Claire P. Hill, Lucile Holmberg, E. C. Mullins, Charles Casey, Doris Johnson, Individually and on behalf of all Residents and Property Owners in Metropolitan Oklahoma City, who have been damaged by the Sonic Boom created by the United States, Plaintiffs,

v.

The **UNITED STATES** of America, Defendant.

Civ. No. 64–270.

United States District Court
W. D. Oklahoma.

Aug. 20, 1965.

Arnold B. Britton, Oklahoma City, Okl., for plaintiffs.

B. Andrew Potter, U. S. Atty., and David A. Kline, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

## OPINION

BOHANON, District Judge.

Plaintiffs bring this action against the United States of America for the alleged taking of an avigation easement over their property and allege that the jurisdiction of the Court is based upon 28 U.S.C. § 1346(a) (2), and that none of the claims exceed the sum of $10,000.

Plaintiffs claim that their property has been damaged by sonic booms caused by certain aircraft flights over plaintiffs' property.

There is no dispute about the facts. The parties entered into a Stipulation of Facts, which is as follows:

*"STIPULATION*

1. This is an attempted class action 'for the benefit of all residents and property owners in metropolitan Oklahoma City' under the provisions of Rule 23(a) (3) of the Federal Rules of Civil Procedure. All the plaintiffs herein reside in the Western Judicial District of Oklahoma and are property owners living in the northwest portion of Oklahoma City.

2. Plaintiffs seek 'just compensation' for the alleged 'taking' by the government of an 'avigation easement' over the properties of the plaintiffs, and bring this action pursuant to 28 U.S.C. 1346(a) (2)—commonly known as 'The Tucker Act.'

3. The 'sonic boom' test program at Oklahoma City, out of which this action arises, was under the direction and control of the Federal Aviation Agency, pursuant to 49 U.S.C. 1353 (b); the United States Air Force loaned planes and personnel to the F. A.A. for the conduct of this program. And, each sonic boom over Oklahoma City was produced by Air Force F–101, F–104, F–106 and B–58 aircraft flying over the city at faster-than-sound speeds. Moreover, this program was begun on February 3, 1964 and was concluded on July 31, 1964.

4. All faster-than-sound flights of aircraft generate sonic booms. When these booms reach the ground, they give off a loud noise (like a thunder clap) and cause some vibration. Both the noise and the vibration last a fraction of a second.

5. The testing program herein of February 3, 1964 to July 31, 1964, was selected to utilize a wide selection of varying meterological and climatic conditions, which vary from season to season and which affect the sonic booms.

6. Initially, there was one flight each day, increasing at a rate of one flight each day until a maximum of eight flights per day was reached. This schedule was maintained for the duration of the tests.

7. Each flight was flown during daylight, at regularly scheduled hours, and at altitudes of about eight miles.

8. Initially, the flights were designed to generate sonic boom overpressures of 1.5 pounds per square foot. Beginning June 11, 1964, each flight was conducted to generate overpressures of 2.0 pounds per square foot.

9. The sonic boom test program at Oklahoma City was designed to determine the public acceptability and the effect on ground structures on booms anticipated from future supersonic transport flights, inasmuch as the projected supersonic transport would travel at faster-than-sound speeds, carry paying passengers, and fly over people and population centers.

10. The Armed Forces of the United States received information from the supersonic tests program at Oklahoma City which is useful to the defense efforts of the United States.

Dated this 26 day of January, 1965.

/s/ Arnold B. Britton

ARNOLD B. BRITTON
Counsel for Plaintiffs

B. ANDREW POTTER
United States Attorney

/s/ David A. Kline

DAVID A. KLINE
Assistant United States Attorney

Counsel for the Defendant

APPROVED this 24th day of February, 1965.

/s/ Luther Bohanon

LUTHER BOHANON
UNITED STATES
DISTRICT JUDGE"

This Stipulation was entered into by the parties and approved by the Court.

■ At the outset it should be noted that plaintiffs claim the right to bring this as a class action under 28 U.S.C., Federal Rules of Civil Procedure, Rule 23. The potential parties are not so numerous as to require a class action, if such would otherwise be proper in this case. The plaintiffs cannot represent those not presently before the Court; consequently, it is not a true class action, and "common relief" is not sought herein such as if injunctive relief were being requested. Here the parties merely claim "similar relief." Interestingly, the plaintiffs cannot know that no land owner in Oklahoma City is claiming more than $10,000, and since they have elected to bring a class action, they must show that the Court has jurisdiction of every claim by each member of the class. The defendant urges that plaintiffs have failed to state a claim upon which relief can be granted, and urges that the United States cannot be sued except where it has given consent—constitutional or congressional. State of Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); Harris v. United States, 205 F.2d 765 (C.A. 10 Cir. 1953).

■ Under the Tucker Act, 28 U.S.C. § 1346(a) (2), the plaintiffs must allege and prove that there has been a "taking" of private property for public use, and therefore are entitled to "just compensation" under the Fifth Amendment.

Under the facts alleged in the Complaint and those set forth in the Stipulation, the most that can be said for plaintiffs' action is that there has been damage as a result of a governmental or proprietary function of the federal government as distinguished from the imposition of the servitude upon private property so as to constitute a partial "taking."

■ The sonic boom tests in question were performed by the government at altitudes far above those altitudes which can be deemed owned by the property owners herein. In fact, according to the Stipulation, the booms took place within navigable air space six to nine miles above the surface of the ground. Under the present law and regulations enacted thereunder, navigable air space is defined as 1,000 feet above congested areas and 500 feet above open land. 49 U.S.C. §§ 1301(24) and 1348(a); 15 C.F.R. 60.17.

■ Under the controlling decisions of United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), and Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), for a land owner to prosecute a claim for an avigation easement, he must establish both that the flights went directly above his land and that such flights were frequent and low.

In Batten v. United States, 306 F.2d 580, 583 (C.A. 10 Cir. 1962), air noise, vibration, drifting smoke, et cetera, originated from an adjacent government airport; the Court held there was no "taking" and observed:

" * * * governmental activities which do not directly encroach on private property are not a taking within the meaning of the Fifth Amendment

even though the consequences of such acts may impair the use of the property."

■ Physical invasion of sound and shock waves of jet aircraft do not constitute a physical taking of property as opposed to a mere nuisance and trespass. See Avery v. U. S., 330 F.2d 640, 643, 165 Ct.Cl. 357 (C.C.1964).

■ There has been no taking of plaintiffs' property in this case, and furthermore, the United States, in the absence of its consent, is immune from suit. All the flights involved in this case which caused the sonic booms were in navigable air space, and although the plaintiffs may have suffered because of the alleged nuisance and some inconvenience, such nuisance and inconvenience are incidental and unavoidably attendant to use of airways.

The defendant's Motion for Summary Judgment will be sustained.