**M. T. VIGIL et al., Plaintiffs,**

v.

**The UNITED STATES of America et al., Defendants.**

Civ. A. No. 67–C–569.

United States District Court
D. Colorado.

Dec. 20, 1968.

<br />

Charles S. Vigil, Denver, Colo., for plaintiffs.

Lawrence M. Henry, U. S. Atty. for the District of Colorado, Robert E. Long, Asst. U. S. Atty., Denver, Colo., and David W. Miller, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This is a class action brought for the benefit of all persons who are descendants of Spanish named Americans who lived in areas ceded to the United States following the Mexican War in 1848. Plaintiffs' claim is for a substantial amount of damages,[1] and it is based on the plaintiffs' allegations of a continuing tort and a taking of property without just compensation by the United States and other defendants.

---

[1.] One Million Dollars actual damages and One Million Dollars exemplary damages for each and every person who can prove that he is a member of the class described above.

The United States and the other defendants, agencies of the United States, have moved to dismiss. Briefs have been filed, the case has been argued, and the matter now stands submitted.

The plaintiffs allege the following:

That in 1492 Spain claimed the entire Western Hemisphere. That thereafter, within the boundaries of the present United States, numerous land grants were made. That land grants were well known in English law and were recognized as a common way of increasing the population in uninhabited areas.

That in the following years expansion westward and the growth of the population caused land grants to be made in areas other than the eastern area of the United States, and that land grants by Spain and its subordinate governments were made in the areas now embraced within the boundaries of many of the present States, including Florida, Georgia, North and South Carolina, Louisiana, Texas, California, New Mexico, Colorado, Arizona and other States extending into the northern section of the United States.

That the seat of the government for New Spain was in Mexico and the seat of the government for Florida and the eastern area of the United States was in Cuba and that these governments gave Spanish grants in areas now covered by most of the United States.

That Mexico became an independent nation in 1821, but it continued to make land grants under the old laws as given by Spain. That thereafter numerous additional grants, recognized and unrecognized by the Government of the United States, were given by the Government of Mexico to various individuals who claimed to be citizens of that government. That this ended in 1848 when the war with Mexico caused a cession of territory much the same as that which occurred in 1803 and in the war with Spain in 1898 when the cession of much of the eastern part of the United States was made.

That the war with Mexico ended with a treaty signed in the town of Guadalupe Hidalgo in 1848, 9 Stat. 922. Article VIII of that treaty provides:

"Mexicans now established in territories previously belonging to Mexico, and which remain for the future within the limits of the United States, as defined by the present treaty, shall be free to continue where they now reside, or to remove at any time to the Mexican republic, retaining the property which they possess in the said territories, or disposing thereof, and removing the proceeds wherever they please, without their being subjected, on this account, to any contribution, tax, or charge whatever.

Those who shall prefer to remain in the said territories, may either retain the title and rights of Mexican citizens, or acquire those of citizens of the United States. But they shall be under the obligation to make their election within one year from the date of the exchange of ratifications of this treaty; and those who shall remain in the said territories after the expiration of that year, without having declared their intention to retain the character of Mexicans, shall be considered to have elected to become citizens of the United States.

In the said territories, property of every kind, now belonging to Mexicans not established there, shall be inviolably respected. The present owners, the heirs of these, and all Mexicans who may hereafter acquire said property by contract, shall enjoy with respect to it guaranties equally ample as if the same belonged to citizens of the United States."

It is further alleged that the persons residing in the territory ceded by Mexico were given the choice of becoming American citizens or remaining Mexican citizens. Those who stayed in the territory elected to become American citizens by free choice, although retaining full right to their Spanish names, customs, religions, traditions and real and

personal property. That the names and numbers of these people and the names and numbers of their descendants were and are ascertainable and they are the grantees and plaintiffs herein.

The complaint alleges nine causes of action which are summarized below:

*First Cause of Action*: The plaintiffs allege that they are descendants of the original grantees of land grants made by various qualified governments of Spain and Mexico, and as such are entitled to claim an interest in the property, real and personal, of such grantees. Plaintiffs also claim an interest in all land grants recognized and unrecognized by the Government of the United States.

*Second Cause of Action*: Plaintiffs allege that the action is founded upon a tort which is continuing from day to day, and that the taking of the lands and properties, real and personal, from the plaintiffs and their predecessors, antecedents, ancestors and forebears was by force, violence, intimidation, collusion, trickery, bribery and other tortious acts covered by the Tort Claims Act.

*Third Cause of Action*: Plaintiffs allege that grantees of property from Spain and Mexico, which property is within the United States, were deprived of their grants, their lands were condemned and the lands were taken and given to people who had no title and no claim to them by a procedure similar to one known as condemnation, and that the Fifth Amendment to the Constitution provides that property cannot be taken for a public use without just compensation and certainly cannot be taken for private use without equally just compensation whether it is done directly or indirectly.

*Fourth Cause of Action*: Plaintiffs allege that the taking of the property covered by the grants effectively deprived the plaintiffs and their forebears of their civil rights under the Civil Rights Act of the United States in that they were deprived of adequate and proper counsel, they were and are subjected to acts of trespass and actual physical violence and their lack of understanding of the English language and the laws and customs of the United States resulted in their losses.

*Fifth Cause of Action*: Plaintiffs allege that the laws of Spain and Mexico did not give mineral or mineral rights to any grantees of land grants and that these rights were retained to the people of Spanish name in the territory and that these people are the plaintiffs herein. The defendants have taken minerals from these lands illegally as trespassers and without an accounting to the plaintiffs.

*Sixth Cause of Action*: Plaintiffs allege that many corporations and individuals have taken lands after the Treaty of Guadalupe Hidalgo in 1848 and after cession of lands in 1803 and 1898 by illegal trespasses; that the United States should be required to make these corporations and individuals make an accounting to it and that the United States should be required to pay to plaintiffs the amounts so recovered.

*Seventh Cause of Action*: Plaintiffs allege that demand has been made on the United States and other defendants for property taken from the plaintiffs and no payment has been made.

*Eighth Cause of Action*: Plaintiffs allege that the Attorney General of the United States has a duty to enforce the law on behalf of these plaintiffs and the plaintiffs request a mandatory order requiring the Attorney General to enter into this case and to enforce and protect the civil and property rights of the plaintiffs.

*Ninth Cause of Action*: Plaintiffs allege that they are descendants of persons who received the Beaubien-Miranda Grant, sometimes called the Maxwell Land Grant, and the Tierra Amarilla Grant and that several corporations, individuals and the United States have taken and used these lands without accounting to the plaintiffs.

The plaintiffs demand the following relief:

1. An Order quieting title in the plaintiffs to such lands as may be held publicly and other lands where no obvious injustice or inequities will result.

2. A judgment in the sum of One Million Dollars ($1,000,000) for each and every plaintiff who can establish that he is a descendant of a Spanish named American who lived in what is now the United States in 1848.

3. A judgment in the sum of One Million Dollars ($1,000,000) for each and every plaintiff described above as exemplary damages.

4. That the Attorney General of the United States be required to intercede on behalf of all the plaintiffs.

5. That regarding the Tierra Amarilla Land Grant present users of said grant, whoever they are, be required to report to the United States Government as to profits made from the grants and specifically from minerals or sale of grants. This shall include the Beaubien-Miranda Grant and all other grants.

The Government has moved for dismissal on the grounds of lack of jurisdiction and, in the alternative, it has moved that the complaint be dismissed as a class action on the ground that the plaintiffs cannot fairly and adequately protect the interests of the class. We address ourselves to the jurisdictional basis only.

 The plaintiffs have requested the convening of a three-judge court and have submitted a proposed stipulation in connection therewith. As we view it, there is no merit whatsoever to this latter request, and the same is denied.

Named as defendants are the United States, the Departments of Justice, Interior and Agriculture, the Bureaus of Land Management and Internal Revenue, the Civil Rights Commission "and all Commissioners of all above commissions."

 The above named Departments, Bureaus and Commission are not suable entities. These are administrative agencies of the United States and are not subject to suit.[2] The above named Departments, Bureaus and Commission are not entities which Congress has authorized to be sued. Actions involving such agencies have generally been brought against the individual members of such agencies. Since no claim has been stated against the individual members of such agencies, the complaint does not state a claim against either the individuals or the agencies. Blackmar v. Guerre, 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952). Consequently, the only question remaining is whether any claim is stated against the United States.

 It is fundamental that the United States, as a sovereign, is immune from suit except to the extent that it consents to be sued and the terms of its consent are defined by law. Such a consent is strictly construed and enforced. See United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); United States v. Shaw, 309 U.S. 495, 500–501, 60 S.Ct. 659, 84 L.Ed. 888 (1940); Minnesota v. United States, 305 U.S. 382, 388–389, 59 S.Ct. 292, 83 L.Ed. 235 (1939).

The complaint alleges three distinct grounds or theories seeking relief against the United States: It alleges continuing tortious acts; a governmental taking of private property without just compensation and a deprivation of the plaintiffs' civil rights.

In determining this motion we are not required to consider the merits of these allegations. The threshold question is one of jurisdiction over subject matter

---

2. Chournos v. United States, et al., 10 Cir., 335 F.2d 918 (1964). An agency of the United States is a suable entity only if Congress has expressly authorized it to be sued. Blackmar v. Guerre, 342 U.S. 512, 515, 72 S.Ct. 410 (1952). Our search of the authorities has revealed no express or implied declaration by Congress that the above named agencies are suable entities.

and parties. A consideration of this question disposes of the case.

## I

### The Federal Tort Claims Act

The plaintiffs' main assertion is that this Court has jurisdiction over their claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. They seek to invoke this Statute in the Second Cause of Action, alleging that "this action is founded upon tort * * and that this tort is a continuing tort," that the plaintiffs and their ancestors were deprived of their lands and properties "by force, violence [sic] intimidation and by collusion and trickery and bribery and by tortious acts coming under the laws of the United States and particularly under the Tort Claims Act of the United States," and further that the defendants in committing the acts complained of "were guilty of malice, fraud, wilful deceit and negligence, consisting of reckless and wilful disregard of the rights of plaintiffs and their ancestors * * *."

■ In essence, the complaint charges a forceful or deceitful taking and conversion of the lands of their ancestors. The plaintiffs' general allegations that the taking occurred in a tortious manner is not enough to bring into play the Federal Tort Claims Act.

■ The Tort Claims Act was not intended to totally abolish the doctrine of sovereign immunity, but rather it is a limited measure under which the United States has consented to be sued for certain *negligent* acts of its employees.[3] The sole legal basis of responsibility of the United States under the Federal Tort Claims Act grant of jurisdiction is negligence of Government employees.[4] In the absence of an allegation that the injury complained of was caused by a specific negligent act or omission of an employee of the United States, the complaint does not describe a controversy cognizable under the grant of power in the Federal Tort Claims Act.[5] Our Court of Appeals has stated in United States v. Gregory, 300 F.2d 11, 99 A.L.R.2d 1011 (10th Cir. 1962),

"liability under the Act is not carte blanche. The United States is liable, as an individual, only in the manner and to the extent to which it has consented. Powell v. United States (10 C.A.) 233 F.2d 851, 854. It does not, ipso facto, become liable merely be-

---

3. The Federal Tort Claims Act provides:
 "(b) Subject to the provisions of chapter 171 of this title, the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).
 The exceptions to the coverage of § 1346 (b) are in 28 U.S.C. § 2680.

4. Id. The Tucker Act authorizes suits against the United States for claims other than those arising out of Tort. Prior to 1946, Congress was swamped with

claims arising out of the negligent conduct of Government employees, and the Federal Tort Claims Act was meant to relieve Congress of this burden. The circumstances out of which the Federal Tort Claims Act arose and subsequent court interpretation make it clear that the Act's purpose is to allow recovery for injuries resulting from negligence and negligence alone. See, e.g., Dalehite v. United States, 346 U.S. 15, 24–30, 44–45, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

5. Although the Federal Tort Claims Act uses the language "negligent or wrongful act or omission," the Supreme Court in Dalehite v. United States, supra, stated that "the statute requires a negligent act" and that the word wrongful "was not added to the jurisdictional grant with any overtones of the absolute liability theory." 346 U.S. at 45, 73 S.Ct. at 972. See also, Harris v. United States, 205 F. 2d 765 (10th Cir. 1953).

cause its acts, if committed by a private person, would have contravened some statute, rule or regulation rendering such person tortiously liable." 300 F.2d at 12–13.

 The grievances described in the complaint are vague and general. No effort is made to identify either the culprits or, for that matter, to ascertain the aggrieved persons, nor are there any specific act or acts charged. The complaint merely tells us that the plaintiffs and their ancestors were (in the past) the beneficiaries of land grants made by Spain and Mexico and that they have been tortiously deprived of their interest in such lands. We are not told how they were deprived of their interests in such land; nor are we told when it occurred. The land is not described and it is not specifically stated that the plaintiffs are the injured ones. These vague allegations fail to satisfy the Federal Tort Claims Act. This Act was not designed to cover this type of action.[6]

The complaint alleges a continuing tort. From this we infer that there has been a continuing trespass by the United States growing out of assumption, control and disposition of the lands claimed by the plaintiffs since the late 1800's. Thus, giving full effect to the plaintiffs' allegations, it is apparent that plaintiffs' rights derive from interests which existed prior to the ceding of dominion by Spain and Mexico and that the plaintiffs are injured by a taking and not merely a trespass, and, indeed, a taking which dates back many years, and in most if not all instances to the last century.[7] If, indeed, the United States has "taken" the lands which were ceded by Spain and Mexico, the plaintiffs' rights, if any, would arise under the so-called Tucker Act.[8]

6. Even if the complaint would have alleged specific acts of negligence in the alleged governmental deprivation of the plaintiffs' interests in the lands, the plaintiffs would be confronted with the two year statute of limitations, 28 U.S.C. § 2401, and the exception to liability contained in 28 U.S.C. § 2680(a). Section 2680(a) withholds consent to suit in "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid * * *." The lands ceded by Spain and Mexico were controlled and disposed of according to statutes and regulations, e.g., homestead laws and mineral leasing laws, and therefore it is difficult to imagine a situation where an act of an employee of the Government in regard to the taking of such lands would not have been "in the execution of a statute or regulation."

7. See United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (continuous trespasses by government airplanes was held to constitute a compensable taking under the Fifth Amendment.); United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390 (1945) (the court stated that "the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking. Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking." 323 U.S. at 378, 65 S.Ct. at 359). In Myers v. United States, 323 F.2d 580 (9th Cir. 1963), the Court of Appeals stated:
 "The repeated characterization by the appellants of the taking by the United States as one of trespass and the commission of waste upon the lands in question does not convert the claims to cases sounding in tort and thereby confer jurisdiction on the District Court under the Federal Tort Claims Act. The Fifth Amendment to the Constitution prohibits the taking of private property for public use without just compensation. To us the claims of appellants against the United States are founded upon the Constitution, and the acts of the United States complained of are in the nature of inverse condemnation." 323 F.2d at 583.

8. See, e.g., United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958); United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947); United States v. Wald, 330 F.2d 871 (10th Cir. 1964); Jones v. United States, 127 F.Supp. 31 (D.C.N.C.1954).

## II

### Whether the Claim is Cognizable under the Tucker Act

We now proceed to consider the second alleged basis for relief, namely, the alleged taking contrary to the Fifth Amendment and the Tucker Act. The procedure for obtaining the "just compensation" guaranteed by the Fifth Amendment is set forth in the Tucker Act, 28 U.S.C. §§ 1346(b), 1491. See United States v. Martin, 267 F.2d 764 (10th Cir. 1959). In order for jurisdiction to exist under the Tucker Act, there must be a specific finding that the Government has taken vested property rights of the plaintiffs. In upholding the District Court's jurisdiction under the Tucker Act in United States v. Martin, supra, the Court of Appeals has stated:

"[i]t is sufficient that the court has found from the facts that vested property rights have been taken by the Government for public purposes. The Constitution affords the measure of the remedy, and the statute [Tucker Act] provides the procedure. The applicability of both to our facts is unmistakably plain." 267 F.2d at 771.

In this case, however, the applicability of the Constitution and the Tucker Act is anything but plain. The complaint is based on the general allegation that the plaintiffs and their ancestors were beneficiaries of land grants made by Spain and Mexico and that the United States Government has taken the lands subject to such grants without providing just compensation to the plaintiffs or their ancestors in violation of the Fifth Amendment. Precisely what land the plaintiffs or their ancestors claimed title to under the land grants is not stated in the complaint, nor are there any allegations pointing out the land which the Government has taken, how the Government took such land or when the Government took it, not to mention a description of the interests taken.

Here again it is impossible for us to hold that the District Court has jurisdiction over the plaintiffs' claims under the Tucker Act. The Tucker Act was intended to waive the doctrine of sovereign immunity in limited conditions. It applies where the United States has, summarily and without any claim of right, taken land which is adversely held. See, e. g., United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L. Ed.2d 1109 (1958); United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947); United States v. Wald, 330 F.2d 871 (10th Cir. 1964). The complaint fails to allege any specific act or acts of taking by the United States and therefore it does not state a claim to which the United States has consented to be sued under the Tucker Act.

The Government also raises the six year statute of limitations as a jurisdictional bar to the maintenance of this suit under the Tucker Act. See 28 U.S.C. § 2401, and Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L. Ed.2d 306 (1957). A claim accrues under the Tucker Act on the date the taking in fact occurs, and in this case the fact of taking would be determinable only from physical evidence of seizure. However, the allegations in this case are so broad and the facts so obscure that it is not possible to determine *when* in fact a taking, if any, occurred. It would appear from the complaint that the acts occurred decades prior to the filing of this suit.[9]

If the plaintiffs do have meritorious claims which can be proven, they should file actions which specifically allege the precise land taken by the Government, the individual plaintiff's claim of title

---

9. It has to be noted in passing that the Tucker Act grants plenary jurisdiction to the Court of Claims, 28 U.S.C. § 1491, while the District Court's jurisdiction is limited to claims not exceeding $10,000.- 00, 28 U.S.C. § 1346(a). The plaintiffs' claims are for many millions of dollars and for that reason this Court is not the proper tribunal to entertain the case.

to such land, and how and when the Government took the land. Assuming, of course, that the jurisdictional limit is met, this Court would have jurisdiction under the Tucker Act to determine the merits of such specific claims. But that is not the case here, for the complaint reads like a page out of history and this Court does not have jurisdiction under the Tucker Act to examine and perhaps rewrite the history of this period. We must hold that this Court does not have jurisdiction over the plaintiffs' claims against the United States under the Tucker Act.[10]

### III

### *The Alleged Deprivation of the Plaintiffs' Civil Rights*

The remaining ground or theory advanced in the complaint is found in the plaintiffs' allegation that the Government's taking of the property covered by the land grants from Spain and Mexico effectively deprived the plaintiffs and their ancestors of their civil rights. In their briefs, the plaintiffs assert that their civil rights were violated under the Fifth Amendment and Sections 1982 and 1983 of 42 U.S.C.

It is axiomatic that the federal courts are limited to that jurisdiction which has been granted by the Congress. We are not at liberty to carve out new constitutional remedies against the United States based on our individual notions that justice would be served thereby, and yet the complaint assumes that such power does exist. It is Congress which holds the key to waiver of sovereign immunity. On the other hand, the courts do not have power to legislate in this area.[11] Moreover, we are not empowered to expand the Tucker Act in an effort to make it fit plaintiffs' case. The Tucker Act is Congress' only grant of jurisdiction over claims against the United States for a violation of the Fifth Amendment's prohibition against a governmental taking of private property without just compensation, and as previously stated the complaint does not state a cause of action within the jurisdictional grant of the Tucker Act.

The plaintiffs further allege that the complaint states a cognizable claim under Sections 1982 and 1983 of Title 42 [12], and thus that this Court has jurisdiction under 28 U.S.C. § 1343. These Sections do not fill the breach since they implement the Thirteenth and Fourteenth Amendments rather than the Fifth Amendment. They protect against

---

10. Besides money damages (just compensation), the plaintiffs also seek an order quieting title in the plaintiffs to all the land still in the public domain and an order for an accounting by the United States. The District Court does not have jurisdiction under the Tucker Act, or any other act of Congress, to enter a decree quieting title or for an accounting in a suit brought against the United States. United States v. Turner, 47 F.2d 86 (8th Cir. 1931); Jacobs v. Brownell, 156 F. Supp. 401 (D.C.D.C.1957).

11. See Dalehite v. United States, 346 U.S. 15, 30, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); United States v. Shaw, 309 U.S. 495, 500–501, 60 S.Ct. 659, 84 L. Ed. 888 (1940).

12. Section 1982 provides:
"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."
Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

oppressive state action rather than federal excesses.[13]

■ It is evident that the complaint is legally insufficient, not only against the named agencies, but also against the United States. Therefore, the motion to dismiss should be and the same is hereby granted. The Clerk is ordered to dismiss the complaint and the several causes of action.

---

13. Broome v. Simon, 255 F.Supp. 434 (1966). See generally, United States v. Harris, 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290 (1882) and Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).