547 P.2d 947 (1976)
STATE of Oklahoma ex rel. John COFFEY, Jr., Adjutant General of the Oklahoma Army National Guard, Petitioner,
v.
The DISTRICT COURT OF OKLAHOMA COUNTY, State of Oklahoma, and Creston B. Williamson, Special Judge of the District Court of Oklahoma County, State of Oklahoma, Respondents.
No. 49169.
Supreme Court of Oklahoma.
March 16, 1976.
Larry Derryberry, Atty. Gen., by Harold B. McMillan, Jr., Asst. Atty. Gen., Oklahoma City, for petitioner.
Fulkerson, Morris & Seago, Oklahoma City, for respondents.
*948 BARNES, Justice:
This action was instituted in the District Court of Oklahoma County by Patrick and Flora Cramer (Plaintiffs) against Petitioner, State of Oklahoma, ex rel. John Coffey, Jr., Adjutant General of the Oklahoma Army National Guard, allegedly conferred by Senate Joint Resolution No. 34, duly approved by the Governor, which purported to waive the immunity of the State from suit. The Plaintiffs alleged in their petition that on January 13, 1975, at the Governor's Inauguration, on land in close proximity to their residence, located at 630 Northeast 18th Street, Oklahoma City, Oklahoma, the Petitioner fired a 19-gun salute from four 105 mm. Howitzers, producing violent concussions and vibrations of the earth and air, which shook the land and residence of Plaintiffs, causing injury to the foundation and superstructure as a whole, including the walls, windows, ceiling, and chimneys. Plaintiffs seek damages in the sum of $2,950.00.
Petitioner appeared specially and moved that Plaintiffs' action be dismissed for the reason that Senate Joint Resolution No. 34 was in contravention of the Oklahoma Constitution. Said motion was denied. Petitioner now brings this action for a Writ of Prohibition.
The Petitioner submits that the Plaintiffs' cause of action is barred by reason of sovereign immunity of the State, and that the Respondents are without jurisdiction to proceed further in this matter.
On the other hand, Plaintiffs set forth eight propositions contending the State's alleged act constituted both a nuisance and a taking of their property, for which the State is strictly liable; that the damages are compensable under Section 24, Article II, of the Oklahoma Constitution, as well as under the theory of torts; and that the Joint Resolution upon which this action is based does not contravene Section 59, Article V, of the Oklahoma Constitution.
The main thrust of Plaintiffs' argument is that liability for consequential damages is created by the language of Section 24, Article II, of the Oklahoma Constitution, which provides that: "Private Property shall not be taken or damaged for public use without just compensation." The question then becomes whether there is sufficient interference with the landowners' use and enjoyment to constitute a "taking" by the sovereign.
The Plaintiffs cite no cases with either facts or issues directly analogous to those with which we are concerned.
In support of their position that Petitioner's interference with their property is so substantial as to constitute a taking, Plaintiffs cite Henthorn v. Oklahoma City, 453 P.2d 1013 (Okl. 1969). In Henthorn, supra, we held it was a question for the trier of fact whether flights in close proximity to the land constituted sufficient interference with the owner's use thereof to be considered a taking. We think that Henthorn, supra, and other so-called "sonic boom" cases are distinguishable from the instant case in that they involved continuous flights over land. The case at bar is not a case of continuing interference, but rather involves a single, isolated incident.
In Eyherabide v. U.S., 345 F.2d 565, 170 Ct.Cl. 598 (1965), involving destruction *949 of improvements on adjoining private property due to gunnery practice on an aerial gunnery range, in which Plaintiff landowners were unable to use their property for any but minimal functions, it was held the injuries were so great that the land had in fact been appropriated and a taking could be implied. However, that case is distinguishable in that it involved a series of occurrences which culminated in the near-total deprivation of the owners' use of their property for the period of almost six years. However, referring to isolated invasions as in the instant case, the Court said:
"* * * Isolated invasions, such as one or two floodings or sprayings, do not make a taking (cases cited), but repeated invasions of the same type have often been held to result in an involuntary servitude."
Harris v. United States, 205 F.2d 765 (10th Cir.1953), involved an action for damage to crops following the spraying of herbicide to destroy objectionable growths on government lands, with no further spraying anticipated. The Court held the single incident involved was not sufficient to constitute a taking in the Constitutional sense. In Harris, supra, the Court also cited several cases involving gun firings from a fort, and said:
"* * * Generally it is held that a single destructive act without a deliberate intent to assert or acquire a proprietary interest or dominion is tortious and within the rule of immunity. Bedford v. United States, 192 U.S. 217, 24 S.Ct. 238, 48 L.Ed. 414.
"To illustrate, a single blasting operation by the United States in a navigable stream causing damage to private property was held to be no more than a remedyless tort in Keokuk & Hamilton Bridge Company v. United States, 260 U.S. 125, 43 S.Ct. 37, 67 L.Ed. 165. In Peabody v. United States, 231 U.S. 530, 34 S.Ct. 159, 58 L.Ed. 351, the United States maintained a fort with guns capable of firing over private lands used for resort purposes. At the time of the bringing of the suit only two guns had been fired for testing purposes resulting in damages to private property. It did not appear that there was any intention on the part of the government to fire any of its guns over or across the lands at any time in the future except for defense purposes, but the apprehension that the guns would be fired depreciated the value of the resort facilities. The court held that the menace created by the presence of the guns did not impose a servitude or constitute an appropriation or taking of private property for public use. And again, in Portsmouth Harbor Land & Hotel Company v. United States, 250 U.S. 1, 39 S.Ct. 399, 63 L.Ed. 809, subsequent gun fire over the same land was held not to justify a different conclusion. But repeated and cumulated firing over the same lands was held to amount to the imposition of a servitude and a taking in Portsmouth Harbor Land & Hotel Company v. United States, 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287." (Emphasis ours)
The record reflects Petitioner acted without any intention to exercise the power of eminent domain or to take Plaintiffs' property, or any part thereof, for a public use, and there is nothing alleged from which a promise on the part of the State to pay Plaintiffs can be implied.
We think the following language from Harris, supra, is directly applicable to the facts presently before this Court:
"* * * We do not understand that a single isolated and unintentional act of the United States resulting in damage or destruction of personal property amounts to a taking in a constitutional sense. It is, we think, rather a tortious act for which the government is only consensually liable." (Emphasis ours)
Plaintiffs further contend that numerous cases held consequential damages *950 arising from the construction of a public improvement may be recovered based upon Section 24, Article II, of the Constitution, particularly emphasizing the words "or damaged" in the sentence: "Private property shall not be taken or damaged for public use without just compensation." As support for this argument, Plaintiffs cite City of Muskogee v. Hancock, 58 Okl. 1, 158 P. 622 (Okl. 1916). In that case damage occasioned by the explosion of dynamite in the construction of a sewer was deemed compensable consequential damages. Plaintiffs contend the violent concussions and vibrations caused by the firings of the cannons is similar in nature and form to the damage caused by blasting with explosives, so by analogy the Plaintiffs' injuries are compensable under Section 24, Article II, supra. We cannot agree. Hancock, supra, involved recovery of damages for making an improvement that was public in its nature, a city sewer. There is no such public improvement in the instant case.
Plaintiffs next argue that the firing of Howitzers is an "abnormally dangerous activity" which is inappropriate or unnatural to the surroundings of a residential neighborhood, citing Grant v. United States, 326 F. Supp. 843 (1970). That case held the detriment suffered by landowners by reason of sonic booms authorized by the government constituted a temporary taking sufficient to give rise to just compensation. We have previously distinguished such sonic boom cases due to the continuing interference involved.
We think the other cases cited by Plaintiffs to support a strict liability theory of recovery are refuted by Insurance Company of North America v. Sheinbein, 488 P.2d 1273 (Okl. 1973), which involved an action for damage to property caused by nonnegligent acts, and the question of whether absolute liability was imposed by Section 23, Article II, of the Oklahoma Constitution. The Court quoted at page 1276 the following:
"`These two sections [Sections 23 and 24 of Article 2 of the Oklahoma Constitution] go a long way toward property owners' reasonable protection, but they do not have the effect of segregating and isolating each owner's property into an utterly inviolable sphere around which others must live in a state of absolute peril.'"
In the alternative, Plaintiffs assert a cause of action sounding in tort, citing City of Oklahoma City v. Daly, 316 P.2d 129 (Okl. 1957), and for nuisance, citing Seismograph Service Corp. v. Buchanan, 316 P.2d 185 (Okl. 1957).
Considering the respective contentions of the parties that the action arose under Section 24, Article II, supra, and that it sounded in tort, the Court stated in Stowell v. Engelson, 201 Okl. 105, 201 P.2d 919 (Okl. 1948):
"If the right of action arose under the constitutional provision it would ... negative the idea that the action sounded in tort ... ."
It has been held that a nuisance is a tort, or at least involved tortious conduct, for the purpose of determining applicability of the doctrine of governmental immunity because it falls into the usual categories of tort liability. See Woods v. Kansas Turnpike Authority, 205 Kan. 770, 472 P.2d 219 (1970).
The general rule that if the government merely commits a tort which does not deprive the owner of the use of his property there is no taking requiring compensation under eminent domain, but, at most, a tort, was followed by this Court in Stowell, supra:
"The right of action of owner of building to recover from the contractor of a city damages caused to such building by reason of violent concussions and vibrations resulting from blasting on other premises in constructing city sewer sounds in tort ... ."
*951 The Plaintiffs' assertion that the case at bar sounds in nuisance or in tort negatives the existence of any right against Petitioner, for the reason of the State's sovereign immunity. The first syllabus of the Court in Bird v. State ex rel. State Highway Department, 514 P.2d 938 (Okl. 1973), states:
"The doctrine of sovereign immunity of the State from tort liability is extant in Oklahoma."
The Court's syllabus in Mountcastle v. State, 193 Okl. 506, 145 P.2d 392 (1943), states:
"A statute authorizing suit against the State does not render the State liable in tort for the negligence or misconduct or wrongful act of officers or agents of the State, where the State is not liable on general principles of law or under any statute or constitutional provision."
Accordingly, the State's liability must be based upon a statute or constitutional provision. The Plaintiffs' assertion that their action is based upon Section 24, Article II, supra, is directly refuted by Harris, supra, which holds a single isolated and unintentional act resulting in damage to personal property does not amount to a taking in a constitutional sense, but is a tortious act for which the government is only consensually liable.
In this case there was no entry upon the Plaintiffs' land, and no taking of physical control of the property. The Plaintiffs' petition does not allege negligence or wrongful acts of officers or agents of the Petitioner, but only that the damage was caused by the concussion and vibrations from the firing of the cannons.
We further note the second syllabus by this Court in Bird v. State ex rel. State Highway Department, supra, which states:
"2. A duly approved legislative joint resolution, like a special act of the Legislature, may violate provisions of Section 59, Article V, Oklahoma Constitution, providing that where a general law can be made applicable, no special law shall be enacted."
Thus, Senate Joint Resolution No. 34, S.L. 1975, purporting to waive the immunity of the State from suit by the Plaintiffs, constitutes a special law within the meaning of Section 59, Article V, of the Oklahoma Constitution and is, therefore, invalid.
No amount of sympathy for the plight of the vexed landowners can change the legal principles applicable to their claim. We, therefore, hold the complained of acts in the instant case are tortious, for which the State is only consensually liable, and Plaintiffs' cause of action is barred by reason of sovereign immunity.
Original jurisdiction assumed. Writ of Prohibition issued.
WILLIAMS, C.J., and DAVISON, BERRY, LAVENDER and SIMMS, JJ., concur.
IRWIN, J., concurs in result.
HODGES, V.C.J., and DOOLIN, J., dissent.