The COUNTY OF OKMULGEE ex rel. The BOARD OF COUNTY COMMISSIONERS OF OKMULGEE COUNTY et al., Plaintiff in Error,

v.

William E. ROBNETT and Hazel Robnett, Defendants in Error.

No. 39345.

Supreme Court of Oklahoma.

Jan. 23, 1962.

Harry D. Pitchford, County Atty., Okmulgee County, Okmulgee, for plaintiff in error.

Boatman, Pugsley & Boatman, Okmulgee, for defendants in error.

BERRY, Justice.

On September 22, 1959, defendants in error, hereafter referred to as "plaintiffs," as owners of 107 acres of land lying in the SE/4 of Sec. 7, T. 11N, R. 13E, Okmulgee County, Oklahoma, instituted this reverse condemnation proceeding against plaintiff in error, hereafter referred to as "defendant," to recover damages allegedly resulting from defendant's taking a portion of the land for highway purposes.

The commissioners who were appointed to inspect the land and report damages thereto that resulted from defendant's taking a portion thereof for highway purposes, filed a report in which such damages were stated to be $750.00. Plaintiffs thereafter filed a demand for a jury trial.

The jury to whom the case was tried returned a verdict in plaintiffs' favor in the amount of $3,500.00. From order of the trial court denying defendant's motion for new trial which was directed to judgment on the verdict, defendant perfected this appeal.

For reversal defendant contends that the proceeding was not instituted against the Board of County Commissioners of Okmulgee County and for said reason the trial court was without jurisdiction; that "the verdict and judgment is not sustained by the evidence and is based on conjecture and speculation and is highly excessive."

We will first consider the contention relating to jurisdiction of the trial court, which contention was neither raised nor presented below.

In the petition filed herein, defendant was designated and referred to as "The County of Okmulgee, ex rel The Board of County Commissioners of Okmulgee County" and with one exception was so designated throughout the proceeding. The exception noted was an "Order Nunc Pro Tunc" which was entered in order to correct an order confirming the report of the commissioners. It was stated in the body of the order that "said Plaintiffs and the Defendant, the Board of County Commissioners of Okmulgee County, Oklahoma, being present in Court by their respective attorneys." At all stages of this proceeding defendant was represented by the County Attorney of Okmulgee County. The notice that was issued in connection with the filing of the petition was served on the County Clerk of Okmulgee County.

In support of its contention that the trial court was without jurisdiction, defendant

quotes from 19 O.S.1951 § 4, to the effect that "In all suits or proceedings by or against a county, the name in which a county shall sue or be sued shall be, 'Board of County Commissioners of the County of ————,'." Defendant cites Green Construction Co. v. Oklahoma County et al., 174 Okl. 290, 50 P.2d 625, and Muskogee County, Oklahoma v. Lanning & McRoberts, 51 Okl. 343, 151 P. 1054, which announce a rule to the general effect that the right of a county to sue or be sued is statutory, and the mode prescribed by statute for prosecuting an action against the county must be strictly followed. For reasons hereinafter pointed out, the cited cases are not in point.

Defendant cites Chicago, R. I. & P. Ry. Co. v. Excise Board of Oklahoma County, 168 Okl. 428, 33 P.2d 1081, as establishing the rule that a county attorney is without authority to enter an appearance for a county. Protest of Kansas City Southern Ry. Co., 157 Okl. 246, 11 P.2d 500, is cited as sustaining the proposition that the chairman of a board of county commissioners may not waive issuance and service of summons.

It is provided in substance in 19 O.S. 1951 § 5, that in proceedings against the county, process shall be served upon the county clerk who shall forthwith advise the county attorney and the board of county commissioners of such service. It is not disputed but that the county clerk was served with process in the instant proceeding and for said reason the cases cited in the foregoing paragraph are without application.

Was the proceeding instituted and maintained against the board of county commissioners? We are of the opinion that the posed question must be answered in the affirmative.

In connection with the phrase "ex rel" (ex relationship) this is said 76 C.J.S. Relator at p. 625:

"An informer; one complaining; person in whose behalf certain writs are issued, such as informations in the nature of quo warranto."

See also Vol. 1, Bouv.Law Dict. Rawle's Third Revision, p. 1106.

Our research has led us to conclude that the phrase "ex rel" is never used and in fact is inapplicable to a party named as a defendant. Therefore the phrase "ex rel" appearing in "The County of Okmulgee, ex rel. The Board of County Commissioners of Okmulgee County" is meaningless and must be considered as superfluous. It follows that the County of Okmulgee and the Board of County Commissioners of said County were both named as defendant. Therefore, and since service was had upon the County Clerk, the Board of County Commissioners must be considered as having been made a party defendant to this proceeding.

Evidence bearing upon defendant's remaining contention can be summarized as follows:

The land in controversy lies immediately east of Okmulgee and south of the hereafter referred to highways. With the exception of about 20 acres of creek-bottom land which abutted upon the highways and a tract of about 25 to 30 acres "upon top of the hill" the land is described as "rough black jack land." A five-room frame house and barn were constructed on the 20-acre tract some 40 years ago. The house at all times in controversy was equipped with modern facilities.

After plans were made to improve the highway that extended east and west in front of the house, defendant unsuccessfully attempted to acquire from plaintiffs 2.61 acres of their land for highway purposes. Thereafter, and beginning in May, 1958, defendant began work incident to improving the highway.

The grade of the old highway was lower than the foundation of the house and the yard surrounding same. In improving and rebuilding the highway the grade thereof was increased to an elevation above the foundation of the house and the yard. A

fill was built from the highway to the driveway leading to the yard and a drainage pipe was built in the fill to accommodate water flowing in the ditch to the south of the highway. Runoff water from hills to the east of the house flowed to the northwest. Prior to reconstructing the highway, this water flowed down the ditch to the south of the highway or across the highway. Following reconstruction, silt collected in and around the drain pipe in the fill and silt covered the front yard to a depth of approximately 1 foot. As a result of the drain pipe becoming clogged with silt and the fact that the elevation of the highway was greater than the foundation of the house and the yard thereto, runoff water flowed across the yard, under and into the house and also stood in the yard for long periods of time. This water also caused earth which covered the pipe that supplied water to the house to be washed away. In cold weather water in the exposed pipe would freeze which caused the pipe to burst. For approximately one year no water could be flowed through the pipe, and it was necessary that water used in the house be hauled in barrels. This service was performed by defendant. It is agreed that it will be necessary to relocate the pipe and that the cost of relocating will be as much as $690.00. As indicated, the record shows a direct taking of 2.61 acres of plaintiffs' land.

Defendant argues that the evidence shows that plaintiffs were only damaged to the extent of cost of relaying the water pipe, or $690.00, and the value of 2.61 acres of land that was directly taken; that the evidence shows that the value of said land did not exceed $30.00 an acre and for said reason plaintiffs' damage did not exceed $768.30. We are unable to agree.

A qualified witness testified that the fair market value of the land prior to reconstruction of the highway was $30.00 an acre, or $3,210.00, and that the value of the house was $3,500.00; that following and as a result of reconstruction of the highway the value of the house was completely de-

stroyed and the value of the land was reduced to $2,710.00. This testimony served to fix plaintiffs' damages at $4,000.00, which did not include damages in the amount of $690.00 which represents cost of relaying the water pipe.

In connection with damages to the house, the witness testified that:

"* * * there's your water all in and around the house because this area is lower than the bar ditch. It's an impossible situation. I don't know if it could be remedied or not, but it's impossible as a situation so far as this house is concerned. It makes the house actually worthless. * * * it has been our experience I might add while I am talking, that a little cheap house like this, which we can sell and do sell around Okmulgee, such a house as this, for $3500.00—it has been my experience you can't move or salvage them. In other words, they are old, you can live in them many many years, but you cannot move them around—no soap. * * *"

As to damage to the land, the witness testified that "you have two, three or four acres in there, and the flat land which certainly never will be worth anything"; that the damage to the land was $1,000.00, $500.00 of which was attributable to loss of a building site as a result of reconstruction of the highway. His testimony served to fix the total damage to the land, including the house at $4,500.00. He did not attempt to estimate damages resulting from relocation of the water pipe.

Defendant introduced evidence tending to show that reconstruction of the highway did not result in damage to plaintiffs' land which was not directly used and that the house as of date of trial had a value. The value was not stated.

Defendant earnestly contends that the evidence wholly fails to show that the house was damaged or that it was valueless following reconstruction of the highway or that a building site in fact existed or that the site was destroyed.

As pointed out, there is competent evidence showing that following reconstruction of the highway the house was not habitable and was worthless for salvage purposes. In brief, that the value of the house was destroyed. Assuming that the alleged fact of a building site was not clearly established or if established that the value thereof was not proved, there would remain competent evidence showing that plaintiffs' damages were approximately $4,690.00. We note that evidence bearing upon the value of the building site tends to show that the value of the level land which abutted upon the highway was greatly in excess of $30.00 an acre.

■ In Long et al. v. State of Oklahoma etc., Okl., 285 P.2d 198, 200, this was said in the body of the opinion:

"The rule has long been established in this State where part of a tract of land is taken by eminent domain, the owner is entitled to receive the difference between the value of the tract before the part is taken and the value of the tract after the part is taken. State ex rel. State Highway Commission v. Anderson, 203 Okl. 683, 226 P.2d 398. * * * *"

It follows that if damage to plaintiffs' land, including the house, was permanent, the evidence as to damages satisfied the above quoted pronouncement.

Defendant contends that the evidence wholly fails to show that the damages to the house were permanent; that if the situation which caused damage to the house and yard was abatable at a cost less than damages which result from the situation remaining unabated, plaintiffs' measure of damages was not the value of the land before and following improvement of the highway. Among the cases cited as sustaining said contention is Ponca Refining Co. v. Smith, 73 Okl. 6, 174 P. 268.

■ The record shows that the case was tried below on the theory that damage to the house and yard was permanent; that the condition which caused the damage was not abatable at a cost which was less than

damages which would otherwise result. This is evidenced by the fact that defendant in its requested instructions failed to submit an instruction that bore upon its present contention, wholly failed to introduce evidence which bore directly upon the contention and does not here urge that the trial court erred in instructing the jury that plaintiffs' measure of damages was the difference in the value of their land prior to reconstruction of highway and its value following reconstruction. It is settled law in this jurisdiction that a party will not be permitted to urge a different theory on appeal than that upon which the case was tried and submitted below. See cases cited following ■ "Appeal and Error", Vol. 2A, West's Okl.Dig. We add, that if the condition which damaged the yard and rendered the house uninhabitable resulted solely from obstruction of the drain pipe in the fill, or the fact that the pipe was inadequate, justification would exist for concluding that the condition was abatable at a cost less than damages which will result from the condition remaining unabated. The evidence, however, shows that the condition results from an increase in the elevation of the highway and the drain pipe becoming clogged with silt, or inadequacy of the drain pipe. There is no evidence that if the latter condition were corrected the house would be fit or suitable as a dwelling. It is not suggested that the cost of rebuilding the highway so as to reduce the grade thereof below that of the house and the cost of providing adequate drainage through the fill would not exceed the amount of damages to the house and yard which will result in runoff water gathering in the yard and in and under the house.

In A.B.C. Construction Company of Oklahoma v. Harold Thomas, Okl., 347 P.2d 649, 652, this was said:

"There being competent evidence tending to show that the building was permanently damaged as a result of the blasting by dynamite and no evidence tending to show that the building was susceptible of repair and the trial court instructing the jury that the measure

of damage is the difference between the fair cash value of the building immediately before and after the damage occurred, the cause will not be reversed for the alleged reason that the trial court, though not requested to do so, failed to instruct the jury upon the theory, that the building was susceptible of repair. * * *"

We are of the opinion that under the facts of this case the above quoted pronouncement is dispositive of defendant's contention.

The judgment on the verdict is sustained by competent evidence and for said reason the judgment is affirmed.

Affirmed.