**J. A. HENTHORN and Vera Henthorn, husband and wife, Plaintiffs in Error,**

v.

**OKLAHOMA CITY, a municipal corporation, Defendant in Error.**

**No. 41793.**

Supreme Court of Oklahoma.

April 29, 1969.

Charles Hill Johns, Midwest City, James W. Bill Berry, Berry & Berry, Oklahoma City, William B. Shultz, Chickasha, for plaintiffs in error.

Roy H. Semtner, Municipal Counselor, James R. Fuson, Asst. Municipal Counselor, for defendant in error.

HODGES, Judge.

Question: Is it error to submit for determination of the jury the question of whether there has been a "taking" of an

avigation or air easement by the defendant City of Oklahoma City where the uncontroverted evidence established daily, frequent, and continuous jet aircraft flights at an altitude of less than 500 feet over and across plaintiffs' land in the glide path of take off and landing at Will Rogers Municipal Airport? We hold it is not.

Plaintiffs are the owners of a 160 acre tract of land located between 1½ and 2 miles north of the north boundary of Will Rogers World Airport owned by the defendant City. They purchased the property in 1943 and resided thereon until August 1960. Plaintiffs allege in their petition that in April 1961 jet aircraft began using the facilities of Will Rogers Airport and from that time made daily, frequent, regular and continuous flights over their property at altitudes of under 500 feet; that such flights at low altitude in landing and taking off destroyed the use of their property for residential purposes and damaged them in the amount of $560,000.00. Commissioners were appointed and returned an appraisal of no damage. Plaintiffs demanded a jury trial which was granted. The jury returned a verdict in favor of the city defendant and plaintiffs appeal.

Upon the trial of the issues plaintiffs offered evidence that jet aircraft daily, frequently and continuously passed over their property at low altitudes making loud noises, interfering with conversations and the use and enjoyment of the property generally. Real estate and land appraisers testified that the property was best suited to residential purposes and since the advent of the flights the property had decreased in value $440,000.00. An expert witness also testified as to the noise level of aircraft that passed over the property.

The defendant city offered evidence substantiating in part the jet overflights of plaintiffs' land at altitudes of from 345 feet to 602 feet approximately, with an average of seven flights a day under 500 feet. Defendant's expert witness testified that the noise level or "noys" rating was not such as to interfere with the use of the

property. They further offered evidence that the value of the property, which was best suited to light industry or industrial purposes, had increased since the beginning of the jet flights from $303,000.00 to $486,000.00 or some $183,000.00.

The uncontroverted evidence in summary indicated daily, frequent, continuous jet overflights of plaintiffs' property at altitudes less than 500 feet. The controverted issues were whether there was an interference with the use and enjoyment of the property due to the noise the jets made in landing and taking off from Will Rogers Airport, and the amount of damages suffered as a result thereof.

This is a case of first impression in this jurisdiction, although this problem has been considered in recent years by other jurisdictions. Without attempting an exhaustive study of decisions from other jurisdictions it will suffice to state briefly some of the cases that bear upon this question.

The landmark case is United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), establishing the principle of a taking of an air easement. There the Federal Government leased an airport and was responsible for military aircraft flying directly over plaintiff's property at tree top level many times a day in landing and taking off from the airport. Even though there was not a taking by the usually accepted means the court said that the operation of military aircraft and others at an altitude of 67 feet above his house, disturbing his sleep, causing vibrations, loud noises and other interferences is a physical invasion of the land owner's property and amounts to a taking of an air easement that is compensable. In Griggs v. Allegheny County, Pa., 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), under a fact situation similar in the location of the plaintiff's property and the low continuous overflights to the Causby case, the court extended liability to owners of airports for the taking of an air easement under the same theory of trespass as the Causby case.

In both Causby and Griggs cases the court discussed the navigable airspace which Congress has placed in the public domain. In Griggs it is set out that Congress has declared "navigable airspace" to mean airspace above the minimum altitude of flight prescribed by regulations issued under the statute and shall include airspace needed to insure safety in take off and landing of aircraft, 72 Stat. 739, 49 U.S.C. Section 1301(24). FAA regulations define minimum safe altitudes other than take off and landing, at 1000 thousand feet over congested areas and 500 feet over other than congested areas. 14 C.F.R. Section 60.17. Whence comes the 500 foot rule advanced in many cases. Generally the 500 foot rule states that the airspace over an individual's property below 500 feet may be the property of the land owner, however the airspace above 500 feet is in the public domain and the individual cannot complain about an invasion of property rights for flights in excess of this altitude, which pass directly over his land.

In the case of Thornburg v. Port of Portland, 233 Or. 178, 376 P.2d 100 (1962) the theory of nuisance was advanced as an avenue of recovery in inverse condemnation cases where there was interference with the use and enjoyment of property caused by aircraft landing and taking off. One other approach to this problem is that of Judge Murrah in his dissent in the case of Batten v. United States, 306 F.2d 580, 10th CCA (1962), where he stated the only theory of recovery necessary is that there must be an asserted interest the law will protect and the interference therewith must be sufficienty direct, sufficiently peculiar, and of sufficient magnitude that fairness and justice as between the state and the citizen, requires the burden imposed to be borne by the public and not the individual alone. The interference alleged there was not that of overflights but was caused by aircraft warming up on runways emitting loud noises, smoke and foul odors.

It is generally conceded that there is a legal right to the use and enjoyment of one's property free from unreasonable interference. The ultimate question is whether there is a sufficient interference with the landowner's use and enjoyment to constitute a taking by a sovereign. Thornburg v. Port of Portland, supra.

The Thornburg case presents a problem similar to the instant one. The plaintiffs there proceeded on the theory that systematic flights directly over their land causing a substantial interference with the use and enjoyment of the land constituted a nuisance; and upon the theory that systematic flights which pass close to the land constitute a taking of an easement for the same reasons. It is also alleged that the continuation of such a nuisance by the government presents a jury question as to a taking of an easement. The Oregon court in a well reasoned opinion on the theory of nuisance discussed both theories of the plaintiffs in light of the 500 foot rule and the boundary line rule, (whether flights are directly over or adjacent to the land) and in much the same way that Judge Murrah reasoned in Batten, decided that the main question is not the height above the land or whether it is directly over the land but whether the continuing interference is substantial enough to constitute a taking. The trier of the facts is the proper one to determine if the interference is substantial enough to constitute a taking according to the Oregon court.

Plaintiffs have cited a number of cases advancing different theories for recovery, however, cite none that concern themselves directly with the question before us regarding the taking of air easements or avigations. Plaintiffs' theory seems to revolve around the 500 foot rule in that if flights are below 500 feet, frequent, continuous, and directly over their land then there is a taking. We have seen that this is not necessarily the test presently, if ever it had been. It is one thing to say there is a taking when aircraft are continually flying right over the tree tops of your premises or within a few feet of your home and another when they come within 350 feet to

500 feet over your property. The Restatement of Law, Torts 2d, § 159 (1965), states as follows regarding this question of height:

L. "Immediate reaches" of the land has not been defined as yet, except to mean that "the aircraft flights were at such altitudes as to interfere substantially with the land owner's possession and use of the airspace above the surface". No more definite line can be drawn than is suggested by the word "immediate". In the ordinary case, flight at 500 feet or more above the surface is not within the "immediate reaches," while flight within 50 feet, which interferes with actual use, clearly is, and flight within 150 feet, which also so interferes, may present a question of fact.

M. "Even though the flight is not within the "immediate reaches" of the air space, it may still unreasonably interfere with the use and enjoyment of the land. In such case the liability will rest upon the basis of nuisance rather than trespass." * *

We are not necessarily adopting the Restatement's test in its entirety in this case, as we are called upon only to determine if this question is for the jury or the court under our fact situation. The Restatement is useful in pointing out that there is a difference in the heights which may or may not be an interference. In the instant case it is not only an interpretation of the uncontested evidence that is to be decided, but also the question of conflicting or controverted facts as to interference with the use of the property. Can it be said that the conflicting testimony as to the amount of interference should be completely disregarded? If we were to do this then we will have determined as insignificant the gravamen of the action, that is, whether there was an *interference with the use and enjoyment of the land,* due to the low, frequent, continuous overflights of jet aircraft. As we have seen from the Thornburg case, supra, and the dissent in the Batten case, supra, the legal right to be protected is the use and enjoyment of property without substantial interference by the sovereign. The sine qua non is the question of interference.

This court has held that the question of a taking in inverse condemnation under Section 24, Art. 2, Constitution, is one for the jury in cases involving an impairment of right of ingress and egress to property by the building of a railroad track in or across a street bordering the property. Foster Lumber Co. v. Arkansas Valley and W. Ry. Co., 20 Okl. 583, 95 P. 224, 100 P. 1110; Atchison, T. and S. F. Ry. Co. v. Terminal Oil Mill Co., 180 Okl. 496, 71 P.2d 617. These cases are similar to the instant one in that to determine if a taking had occurred it was necessary to determine if there had been a "material impairment" as distinguished from a mere inconvenience, which we have held to be a question for the jury to determine.

■■■ We believe the better rule is that there must be a substantial interference with the use and enjoyment of the property affected, in addition to showing low, continuous, frequent flights over or in close proximity to the plaintiff's property. The question of substantial interference is one that the trier of the facts must decide. The court did not err in submitting the question of a taking to the jury.

Judgment affirmed.

All Justices concur.