2015 OK CIV APP 76

**Deary VAUGHN and Esther Vaughn d/b/a Broadway Apartments, a limited partnership, Petitioners/Appellees/Counter–Appellants,**

**v.**

**CITY OF MUSKOGEE, Respondent/Appellant/Counter–Appellee.**

**No. 111,065.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 10, 2015.

Rehearing Denied March 19, 2015.

**194**

David E. Anderson, Miami, Oklahoma, for
Petitioners/Appellees/Counter–Appellants.

Betty Outhier Williams, Betty Outhier Williams Law Office, Muskogee, Oklahoma, for Respondent/Appellant/Counter–Appellee.

JOHN F. FISCHER, Presiding Judge.

¶1 The City of Muskogee appeals the district court's judgment in this inverse condemnation proceeding finding in favor of Deary and Esther Vaughn and awarding them $1,952,682.00. The Vaughns appeal the district court's denial of their request for prejudgment interest and that part of the judgment granting title to their real property to the City. Because the issue of a condemnatory taking has not been resolved, the judgment appealed is reversed, and this case is remanded for further proceedings consistent with this Opinion.

## BACKGROUND

¶2 In May 2005, the City completed the administrative process authorized by its municipal code to abate a nuisance and declared certain structures located on real property owned by the Vaughns to be a danger to the public. In September 2006, the City entered the Vaughns' property, demolished and removed those structures and any personal property located therein. On October 2, 2007, the Vaughns filed this inverse condemnation proceeding. In their petition, the Vaughns alleged that they were the owners of real property located in the City of Muskogee, and that the City entered their real property without permission and "demolished and destroyed certain structures thereon and their contents, plus fixtures, improvements and personal property thereon." The Vaughns alleged that the actions of the City constituted a "taking" of their property for which they were entitled to just compensation pursuant to Article II, section 24 of the Oklahoma Constitution. Commissioners were appointed who determined that the value of the property at issue was $1,952,682.00. The Vaughns' inverse condemnation claim was tried to the district court on June 15, 2011.

¶3 At the beginning of the trial, the parties stipulated that the Vaughns were the owners of the property in question and that the City had demolished the structures and removed personal property located on the Vaughns' real property. The district court determined that because it was undisputed that the City had exercised "dominion and control" over the Vaughns' property, no additional evidence was necessary to establish that a compensatory taking had occurred. The court granted the Vaughns' motion for directed verdict but then allowed the parties to make offers of proof as to evidence they would have presented if the trial had proceeded. The City's offer would have shown that the demolition and removal of the Vaughns' structures was a proper exercise of the City's police power and that the Vaughns had received the required statutory notice prior to the demolition. The Vaughns' offer would have shown that the Vaughns did not know of the demolition until after it had been completed and that the City did not follow the proper procedures before removing the structures.

¶4 At the conclusion of the proffered evidence, the district court found in favor of the Vaughns. The formal judgment subsequently entered awarded the Vaughns $1,952,682.00, certain costs and interest, but denied their request for pre-judgment interest. The judgment also awarded title to the Vaughns' real property to the City on payment of the judgment. Both the City and the Vaughns appeal.

## STANDARD OF REVIEW

¶5 The City appeals the procedure used by the district court at the trial of the Vaughns' inverse condemnation claim. The Vaughns appeal that part of the judgment awarding title to their real property to the City and denying their request for pre-judgment interest. Inverse condemnation proceedings "do not involve a tort and are not civil actions at law or suits in equity, but are special statutory proceedings." *Oxley v. City of Tulsa, By and Through Tulsa Airport Auth.*, 1989 OK 166, ¶11, 794 P.2d 742 (Opinion on Rehearing). Inverse condemnation proceedings are "strictly controlled by the constitution and statutes." *Carter v. City of Oklahoma City*, 1993 OK 134, ¶12, 862 P.2d 77, 80 (footnote omitted). Statutory

interpretation involving condemnation law raises legal issues which are subject to the de novo standard of review. *State ex rel. Dep't of Transp. v. Little,* 2004 OK 74, ¶ 10, 100 P.3d 707, 711. De novo review is "plenary, independent and nondeferential." *Id.* (footnote omitted).

## ANALYSIS

¶ 6 When private property is taken for a public purpose pursuant to the government's power of eminent domain, the property owner is entitled to "just compensation" for the property taken and damage to any portion of the property not taken. Okla. Const. art. 2, § 24; 27 O.S.2011 § 16. "The term property ... includes not only real estate held in fee, but also easements, personal property and every valuable interest which can be enjoyed and recognized as property." *Graham v. City of Duncan,* 1960 OK 149, ¶ 18, 354 P.2d 458, 461. Where no physical taking of property has occurred, the property owner is still entitled to just compensation if the government's actions constitute such a "substantial interference" with the use of the property that a de facto taking of the owner's property occurs. *Mattoon v. City of Norman,* 1980 OK 137, ¶ 11, 617 P.2d 1347, 1349.[1]

¶ 7 If the government does not institute condemnation proceedings, the property owner can file an inverse condemnation proceeding to recover for the property taken. *State Highway Comm'n v. Smith,* 1930 OK 480, 146 Okla. 243, 293 P. 1002.[2] "Inverse condemnation is 'a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.'" *Stewart v. Rood,* 1990 OK

69, n. 32, 796 P.2d 321, 335 n. 32, *overruled on other grounds* (citing *Agins v. Tiburon,* 447 U.S. 255, 258 n. 2, 100 S.Ct. 2138, 2140 n. 2, 65 L.Ed.2d 106 (1980)). Statutory recognition of a property owner's right to file an inverse condemnation proceeding is found in Title 27 O.S.2011 § 12 of the eminent domain statutes: "Where an inverse condemnation proceeding is instituted by the owner of any right, title or interest in real property because of use of his property in any public program or project...." *See also,* 66 O.S. 2011 § 53 (providing that in railroad condemnation proceedings commissioners may be appointed and just compensation determined "upon the application or petition of either party"). However, a property owner is entitled to no compensation unless property is actually taken and/or damaged, or the condemning authority exercises such "dominion and control" over the owner's property as to constitute a de facto taking. *State ex rel. Dep't of Highways v. Cook,* 1975 OK 153, ¶ 7, 542 P.2d 1405, 1407.

¶ 8 Most of the relevant facts in this case are undisputed. The City has eminent domain authority by which it could have condemned all or part of the Vaughns' property. "Any ... city ... shall have power to condemn lands in like manner as railroad companies, for highways, rights-of-way, building sites, cemeteries, public parks and other public purposes." 27 O.S.2011 § 5.[3] However, the City did not institute condemnation proceedings before entering the Vaughns' real property. According to its offer of proof, a condemnation proceeding was unnecessary because the City was exercising its police power to abate a public nuisance when it demolished the structures located on the Vaughns' real property.[4]

1. We express no opinion regarding the Vaughns' apparent claim that an inverse condemnation proceeding is appropriate for the recovery of personal property where no taking of real property has occurred.

2. In addition, property owners can file a tort claim for damage caused by the government's negligence during a taking. *See Curtis v. WFEC R.R. Co.,* 2000 OK 26, 1 P.3d 996; *Cox Enters., Ltd. v. Phillips Petroleum Co.,* 1976 OK 75, 550 P.2d 1324 (citing *Allen v. Transok Pipe Line Co.,* 1976 OK 53, 552 P.2d 375). The availability of

this claim was specifically discussed by the district court and counsel for the Vaughns and the record is clear; the Vaughns are not pursuing a tort claim in this proceeding.

3. The relevant railroad statutes are set forth at 66 O.S.2011 §§ 51–66.

4. Because the district court precluded the City's evidence on this matter, any preclusive effect resulting from the City's nuisance abatement and code enforcement action has not been considered and is, therefore, not addressed in this Opinion.

¶ 9 One year after the City removed the structures, the Vaughns filed their petition alleging that the City's action constituted a taking. . The Vaughns sought damages for the diminished value of their property. Commissioners were appointed and instructed "to view and appraise the property of the Plaintiffs described in their Petition and in the attached Exhibit 'A' incorporated herein and made a part hereof." Exhibit A contains the legal description of the Vaughns' real property and was also attached to their petition.

¶ 10 The Commissioners filed their Report on February 11, 2008, stating that the just compensation due to the Vaughns was $1,952,682.00. The Vaughns filed an objection to the Report arguing, in substance, that (1) the Commissioners did not have the training and experience necessary to appraise property that is unique because it is located adjacent to the Inland Waterway System; (2) the Commissioners failed to consider the highest and best use for their property; and (3) the Commissioners failed to follow the district court's instructions. The objection also included a demand for jury trial. On April 15, 2008, the last day for filing a timely objection to the Commissioners' Report or a demand for a jury trial on the issue of damages, the Vaughns withdrew both their objection to the Commissioners' Report and demand for jury trial. The following day, the City filed its own objection to the Commissioners' Report and demand for jury trial on the issue of damages.

¶ 11 The City's fillings were the subject of an original action filed in the Oklahoma Supreme Court, Case No. 105,848. The Vaughns filed that action contending the City's objection and demand had been filed out of time and should not be considered. On June 9, 2008, the Supreme Court assumed jurisdiction and issued a writ of prohibition precluding the district court from considering the City's objection and demand for jury trial. The writ concludes by stating that it should not be "construed as an impediment to the district court's exercise of its power to resolve any controversy over the fact of taking."

¶ 12 After remand, the district court conducted a non-jury trial of the Vaughns' inverse condemnation claim. The Vaughns' demand for a jury trial had been withdrawn.[5] And, the parties interpreted the writ in Case No. 105,848 as prohibiting a jury trial on any issue. At the beginning of the trial, as previously stated, the parties stipulated that the Vaughns were the owners of the property in question and that the City "entered upon their real property and demolished structures located thereupon." Based on that stipulation, the Vaughns moved for a directed verdict. The City objected, arguing that it was entitled to present its "affirmative defense." The City contended that no taking had occurred but only the abatement of a nuisance pursuant to its police power. The district court concluded that the City was prevented from arguing that no taking had occurred because it had not filed a timely objection to the Commissioners' Report. The court then found that the stipulation resolved the taking issue and granted the Vaughns' motion for directed verdict. At that point, and because there was no effective demand for jury trial putting at issue the value of the property taken, the district court found in favor of the Vaughns in the amount of $1,952,682.00, the amount the Commissioners had determined was just compensation for the City's actions. *See County of Okmulgee v. Robnett*, 1962 OK 19, 368 P.2d 502 (demand for jury trial raises issue of damages in inverse condemnation case).

¶ 13 The parties were directed to prepare a formal judgment for the district court's signature reflecting that ruling. However, they were unable to agree on the form of the

---

*See State ex rel. Dep't of Transp. v. Little*, 2004 OK 74, ¶ 24, 100 P.3d 707, 719 (final adjudicative administrative decision may be preclusive on the issue).

**5.** *Cf., Western Farmers Elec. Coop. v. Rowlett*, 1955 OK 254, 288 P.2d 726 (demand for jury trial filed after the time authorized by statute in condemnation proceedings is a nullity and party filing a timely demand may withdraw the demand removing the issue of damages from the jury); *Short v. State Highway Comm'n*, 1931 OK 352, 151 Okla. 85, 1 P.2d 676 (party failing to file a timely demand for jury trial may not rely on demand filed by opposing party).

judgment. According to the Vaughns, the Commissioners were only asked, and therefore only authorized, to determine the value of the demolished structures, the personal property contained therein and the damage to their property rights. Therefore, they argued that the amount reported by the Commissioners did not include the value of their real property. The City contended the amount reported by the Commissioners included all of the Vaughns' property and, therefore, the City should be awarded title to the real property. Both parties submitted proposed judgments reflecting their positions. As interpreted by the district court, the $1,952,682.00 amount reported by the Commissioners was the just compensation due to the Vaughns for the taking of their structures, personal property and now vacant real property. The district court signed the form proposed by the City, entered judgment in favor of the Vaughns in the amount of $1,952,682.00 and directed that title to the Vaughns' real property would be transferred to the City on payment of the judgment.

## I. The City's Appeal

¶ 14 The City's appeal challenges the procedure followed by the district court in the trial of the Vaughns' inverse condemnation claim. The City contends that it was error to grant the motion for directed verdict and enter judgment in favor of the Vaughns solely on the basis of the parties' stipulation and without considering evidence of the City's defense. The City argues that in demolishing the structures on the Vaughns' property, the City was acting within its police power to abate a public nuisance rather than pursuant to its power of eminent domain to "take" the Vaughns' property. The City concludes, therefore, that no compensatory taking occurred. The City's position is supported by long established case law. *Jacobs Ranch, L.L.C. v. Smith,* 2006 OK 34, ¶ 52, 148 P.3d 842, 855–56 (citing *Gibbons v. Missouri, K. & T.R. Co.,* 1930 OK 108, 142 Okla. 146, 285 P. 1040) (reasonable governmental regulation of private property pursuant to police power is not a compensable taking described in Okla. Const. art. 2, § 24). *Accord April v. City of Broken Arrow,* 1989 OK 70, 775 P.2d 1347 (city's legitimate exercise of police power controls owner's use of property). *But see, Mattoon v. City of Norman,* 1980 OK 137, 617 P.2d 1347, and cases cited therein (holding that a valid exercise of police power does not necessarily preclude compensation for property damaged in the process).

### A. Inverse Condemnation Procedure

¶ 15 The district court determined that the City was required to raise the taking issue in an objection to the Commissioners' Report. In reaching this conclusion, the district court followed the statutory procedure established for eminent domain condemnation proceedings. In condemnation proceedings instituted pursuant to the government's power of eminent domain only three pleadings are allowed, the petition, an objection to the report of the commissioners and a demand for jury trial. *Board of County Comm'rs of Creek County v. Casteel,* 1974 OK 31, ¶ 16, 522 P.2d 608, 610 (citing 66 O.S.1971 § 55). Of those three, "[o]nly an objection to the report of the commissioners meets the statutory requirement necessary for bringing forth the issue of the necessity of the taking." *Id.* ¶ 17, 522 P.2d at 611. Because the Vaughns had withdrawn their objection to the Commissioners' Report and the Supreme Court had prohibited consideration of the City's objection, the district court concluded it could not consider the City's defense.

¶ 16 The district court's reliance on the "three-pleading" rule followed in eminent domain proceedings is not without precedent. In *Rummage v. State ex rel. Department of Transportation,* 1993 OK CIV APP 39, ¶ 16, 849 P.2d 1109, 1112, this Court held "the procedures for an inverse condemnation action to be the same as those for eminent domain condemnation in accordance with 66 O.S.1991 §§ 51 et seq." *See also, Incorporated Town of Pittsburg v. Cochrane,* 1948 OK 121, 200 Okla. 497, 197 P.2d 287 (procedure in inverse condemnation proceedings is established by railroad condemnation statutes).

¶ 17 Although the procedure in eminent domain proceedings is well settled, deviation from the three-pleading rule in inverse con-

demnation proceedings has not been uncommon. *See, e.g., Sullivant v. Oklahoma City,* 1997 OK 68, 940 P.2d 220 (no error in granting city's summary judgment motion on property owner's inverse condemnation claim on the basis that damage to door during valid execution of police warrant was not a taking); *Godfrey v. City of Oklahoma City,* 1977 OK 31, 560 P.2d 965 (error to deny city's motion to dismiss inverse condemnation case where no taking occurred); *Incorporated Town of Pittsburg v. Cochrane,* 1948 OK 121, 200 Okla. 497, 197 P.2d 287 (allowance of additional pleadings beyond the petition and objection in inverse condemnation proceedings is within the sound discretion of the district court). As this Court has observed, the development of the procedure to be used in inverse condemnation proceedings "has not been completely successful." *Williams v. State ex rel. Dep't of Transp.,* 2000 OK CIV APP 19, ¶ 33, 998 P.2d 1245, 1252.

¶ 18 Nonetheless, despite occasional deviations, the three-pleading procedure has been most often followed, expressly or by implication, in inverse condemnation proceedings. *See Oxley,* 1989 OK 166, 794 P.2d 742 (city's exception to the commissioners' report raised issue of taking); *City of Shawnee v. Thompson,* 1954 OK 262, 275 P.2d 323 (city's objection to the commissioners' report raised the issue of plaintiff's ownership of sewer line allegedly taken by city); *Kline v. Bd. of County Comm'rs of Blaine County,* 1954 OK 93, 268 P.2d 281 (only filing of commissioners' report starts the time within which to file demand for jury trial in inverse condemnation proceeding); *County of Okmulgee v. Robnett,* 1962 OK 19, 368 P.2d 502 (property owner's demand for jury trial sufficient to submit issue of amount of damage to owner's property to jury in inverse condemnation proceeding).

¶ 19 However, to resolve the issue raised by the City, we must determine whether the three-pleading procedure is exclusive and particularly whether the taking issue can only be raised by the government's objection to the commissioners' report. This Court's holding in *Rummage* would suggest that the taking issue in an inverse condemnation proceeding must be raised by an objection to the commissioners' report. That is certainly the result in eminent domain proceedings. *See Casteel,* 1974 OK 31, ¶ 16, 522 P.2d at 610–11 (property owners' answer was insufficient and they waived right to hearing on necessity of the taking by not filing an objection to commissioners report within the statutorily prescribed time). However, in none of the previously decided cases has the issue been resolved with which we are confronted: In the absence of an objection to the commissioners' report, are the parties entitled to litigate the taking issue in an inverse condemnation case?

### B. Inverse Condemnation Pleadings

¶ 20 Prior case law has established that the parties to an inverse condemnation proceeding are entitled to a trial on the taking issue in certain circumstances. *Oxley,* 1989 OK 166, ¶¶ 15–16, 794 P.2d at 745–46 (determination of a de facto taking claim requires resolution of factual disputes by the jury). Where an inverse condemnation petition states "facts which may constitute a taking," the petition "raises a question of fact sufficient to withstand the challenge of a demurrer" and an "issue for the trier of facts" that "should be determined by general principles of due process . . . ." *Mattoon,* 1980 OK 137, ¶¶ 16, 21, 617 P.2d at 1350–51 (sufficient interference to constitute a de facto taking is a question for the trier of fact). "[I]n an action for inverse condemnation the issue of taking is critical and is a fact question which, unless confessed, must be tried to a jury." *Carter v. City of Oklahoma City,* 1993 OK 134, ¶ 16, 862 P.2d 77, 81. Here, the taking issue was not conceded by the City. We agree with this Court's conclusion in *Williams,* 2000 OK CIV APP 19, ¶ 36, 998 P.2d at 1252, that the requirement in Article 2, § 24 of the Constitution for a judicial determination of the "character of the use" of the property allegedly taken necessarily requires a trial to determine if a taking has occurred. Although prior inverse condemnation case law has only concerned de facto taking claims, we find that distinction immaterial. The taking issue, whether physical or de facto, is raised by the property owner's petition.

## C. Inverse Condemnation
## Burden of Persuasion

¶ 21 Even though an inverse condemnation petition raises the taking issue, what has yet to be determined is who has the burden of persuasion with respect to that issue. The Supreme Court has resolved the burden of persuasion question with respect to other issues that can arise in inverse condemnation proceedings. *See Incorporated Town of Pittsburg v. Cochrane*, 1948 OK 121, ¶ 0, 200 Okla. 497, 197 P.2d 287, 288 (Syllabus 1) (property owner in inverse condemnation case must prove title to the property allegedly taken "as that lies at the foundation of the suit or proceedings"). *Accord City of Shawnee v. Thompson*, 1954 OK 262, 275 P.2d 323; *Putnam v. Oklahoma City*, 1950 OK 272, 203 Okla. 570, 224 P.2d 270. *See also, Oxley*, 1989 OK 166, n. 4, 794 P.2d at 746 n. 4 (to satisfy the sufficient interference test necessary to constitute a de facto taking, the landowner must prove significant impairment of the fee estate); *Brewer v. City of Norman*, 1974 OK 123, 527 P.2d 1134 (property owner's evidence of damage resulting from city's street modifications without showing exercise of city's police power was unreasonable was insufficient to establish a de facto taking in inverse condemnation proceeding). These cases are consistent with the general rule in civil actions that the burden of persuasion "as to any particular fact rests upon the party asserting such fact." *Colton v. Huntleigh USA Corp.*, 2005 OK 46, ¶ 10, 121 P.3d 1070, 1073. *See also, Bd. of County Comm'rs of Marshall County v. Snellgrove*, 1967 OK 108, ¶ 20, 428 P.2d 272, 276 ("It is well settled that the burden of [persuasion] rests upon the party having the affirmative as made up by the pleadings, and such party must prove every essential fact necessary to establish his cause of action or defense.").

¶ 22 Consistent with the general rule in civil actions, the rule in condemnation proceedings instituted pursuant to the government's power of eminent domain is that the allocation of the burden of persuasion is "fundamentally dependent upon the issues to be tried." *Rowlett*, 1955 OK 254, ¶ 4, 288 P.2d at 728. "[T]he government, as plaintiff, proceeds against the landowner, as defendant." *State ex rel. Dep't of Transp. v. Post*, 2005 OK 69, ¶ 7, 125 P.3d 1183, 1186. But, the property owner still has the burden of proving the amount of damage and, therefore, the right to open and close on that issue. *Rowlett*, 1955 OK 254, ¶¶ 0, 5, 288 P.2d at 727–28. *Accord State ex rel. Dep't of Transp. v. Lamar Advertising of Okla., Inc.*, 2014 OK 47, ¶ 24, 335 P.3d 771, 778–79 (once the condemnor proves the validity of a taking, the burden shifts to the condemnee to prove the value of the property taken). Often in eminent domain cases, "the fact of a taking is not the issue . . . ." *Post*, 2005 OK 69, ¶ 8, 125 P.3d at 1186. However, where the taking issue is contested, the government has the burden of proving the necessity of the taking because that is the party "seeking to have the appropriation made . . . ." *Rowlett*, 1955 OK 254, ¶ 4, 288 P.2d at 727.

¶ 23 In inverse condemnation cases, the procedural posture is reversed. The property owner, "as plaintiff, proceeds against the government, as a defendant." *Post*, 2005 OK 69, ¶ 7, 125 P.3d at 1186. The petition must allege not only that the value of the owner's property has been diminished but also that the diminished value resulted from an exercise of the government's power of eminent domain to "take" the plaintiff's property. Those issues may be resolved in separate phases. *Oxley*, 1989 OK 166, ¶ 13, 794 P.2d at 745. And, it may be more efficient to do so. If no taking has occurred, consideration of the damage issue would be unnecessary. And, in inverse condemnation proceedings the government often disputes that a taking has occurred.[6] Therefore, exclusive adherence to the eminent domain rule

---

6. *Cf., Henthorn v. Oklahoma City*, 1969 OK 76, 453 P.2d 1013 (judgment for city affirmed where jury did not find that interference from airport operations was substantial enough to constitute a taking); *State ex rel. Dep't of Highways v. Cook*, 1975 OK 153, 542 P.2d 1405 (writ issued to prohibit prosecution of inverse condemnation action by abutting land owner based on allegation of taking from denial of access to highway); *Morain v. City of Norman*, 1993 OK 149, 863 P.2d 1246 (judgment for city affirmed based on finding that flooding from alleged inadequate drainage was not substantial enough to constitute a taking).

that the taking issue can only be raised by the property owner's objection to the commissioners' report will not determine issues essential to the resolution of an inverse condemnation proceeding. *See, e.g., Williams,* 2000 OK CIV APP. 19, ¶ 36, 998 P.2d at 1252–53 (evidence at trial required to avoid judgment based solely on property owner's allegation that a taking occurred). Further, a rule that would require the property owner in an inverse condemnation proceeding to prove that a de facto taking of property has occurred, as in *Brewer·v. City of Norman,* 1974 OK 123, 527 P.2d 1134, but not require the property owner in an inverse condemnation case to prove that a physical taking of property has occurred cannot be derived from any relevant precedent.

 ¶ 24 Consequently, we hold, as did this Court in *Williams,* that in an inverse condemnation proceeding the burden of proving that a taking has occurred is on the property owner.[7] Because we have previously determined that a trial of the taking issue, if contested, is constitutionally required in every inverse condemnation proceeding, allocating the burden of persuasion of that issue to the property owner leads to the conclusion that the property owner, as plaintiff, has that burden whether or not the government files an objection to the commissioners' report or a demand for jury trial on the issue of damages. To hold otherwise would invert the traditional order of trial followed in civil actions and eminent domain proceedings. *See* 66 O.S.2011 § 55(A) (trial of damage issues in condemnation proceedings "shall be conducted and judgment entered in the same manner as civil actions in the district court"), and 12 O.S.2011 § 577 (party on whom the burden rests must first produce evidence). It would also require the government to first produce evidence that there was no taking without necessarily knowing what the property owner claimed was taken. Certainly, the government can raise the taking issue in an objection to the commissioners' report. But that is not the exclusive procedure by which the issue may be contested. In order to prevail in an inverse condemnation proceeding, unless the government concedes the issue, a property owner must first produce evidence that a taking has occurred because the taking issue "lies at the foundation" of the property owner's inverse condemnation claim. *Cochrane,* 1948 OK 121, ¶ 0, 200 Okla. 497, 197 P.2d at 288 (Syllabus 1).

¶ 25 Consequently, when this trial began and in order to recover the Vaughns had to prove: (1) they owned the property in question; (2) the City's actions constituted a condemnatory taking of their property; and (3) the amount of damage to their property from the City's actions. The parties' stipulation resolved the first issue. The absence of a demand for jury trial made a trial of the

7. To the extent *Williams* suggests that the right to demand a jury trial on the taking issue in an inverse condemnation case can only be made in an objection to the commissioners' report and/or demand for jury trial, we disagree. For the reasons stated in this Opinion, an inverse condemnation proceeding is sufficiently unique to require deviation from the statutory procedure established for railroad companies in this instance. *See* 66 O.S.2011 § 55 (demand for jury trial must be made within sixty days after commissioners' report and raises only the amount of damages to be paid landowner). We reach this conclusion based on the long line of decisions holding that the taking issue in an inverse condemnation case is a question for the jury. *See Carter v. City of Oklahoma City,* 1993 OK 134, ¶ 16, 862 P.2d 77, 81 (jury not the commissioners determines the issue of taking in inverse condemnation case). *Accord Oxley v. City of Tulsa, By and Through Tulsa Airport Auth.,* 1989 OK 166, ¶ 15, 794 P.2d 742, 745 (issue of de facto taking in inverse condemnation case "is a jury question"); *Henthorn v. Oklahoma City,* 1969 OK 76, ¶¶ 14–15, 453 P.2d 1013, 1016 (trial court did not err in submitting question of taking to jury in inverse condemnation case) (citing *Foster Lumber Co. v. Arkansas Valley and W. Ry. Co.,* 1908 OK 65, 95 P. 224; *Atchison, T. and S. F. Ry. Co. v. Terminal Oil Mill Co.,* 1937 OK 349, 180 Okla. 496, 71 P.2d 617). "These cases are similar to the instant one in that to determine if a taking had occurred it was necessary to determine if there had been a 'material impairment' as distinguished from a mere inconvenience, which we have held to be a question for the jury to determine." *Henthorn,* 1969 OK 76, ¶ 14, 453 P.2d at 1016. Consequently, either party may request a jury trial on the taking issue in an inverse condemnation case whether the party files an exception to the commissioners' report or demands a jury trial on the issue of damages. For obvious reasons, determination of the taking issue in an inverse condemnation case may make it unnecessary to appoint commissioners or proceed with a determination of the property owner's alleged damages.

third issue unnecessary and constituted an acceptance of the Commissioners' award by both parties. However, proving that their property was demolished does not satisfy the Vaughns' burden of proving that their property was "taken." As previously discussed, the reasonable exercise of the City's police power does not constitute a "taking." *Mattoon*, 1980 OK 137, ¶ 10, 617 P.2d at 1349. The Vaughns introduced no evidence regarding the taking issue. And, even if we were to construe the stipulation as satisfying the Vaughns' burden on the taking issue, the burden of going forward with evidence would have merely shifted to the City to prove that a taking had not occurred. *Cf., Harder v. F.C. Clinton, Inc.*, 1997 OK 137, ¶ 8 and n. 13, 948 P.2d at 303; 12 O.S.2011 § 577 (Third).

¶ 26 In eminent domain cases, the findings of the trial court on the taking issue "will not be disturbed on appeal where there is evidence to support such findings." *Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc.*, 1997 OK 78, ¶ 18, 941 P.2d 995, 1000. *Accord Lamar Advertising*, 2014 OK 47, ¶ 8, 335 P.3d at 774 (findings by the trier of fact in condemnation proceedings will only be set aside if they are not supported by any competent evidence). Applying that rule in this inverse condemnation proceeding requires reversal of the judgment. The stipulation does not establish that the Vaughns' property was taken. Consequently, it was error to grant the Vaughns' motion for directed verdict, and this case must be remanded for a trial of the taking issue consistent with the procedure set out in this Opinion. The previously issued writ of prohibition by the Supreme Court in this proceeding (Case No. 105,848) is not "an impediment to the district court's exercise of its power to resolve any controversy over the fact of taking." [8]

## II. The Vaughns' Appeal

¶ 27 The Vaughns raise two issues in their counter-appeal. They argue that the district court erred in awarding title to their real property to the City. They also argue the

district court erred in refusing to grant prejudgment interest.

## A. The Real Property Issue

¶ 28 The Vaughns filed this inverse condemnation proceeding seeking compensation for the "taking or damage" to their property described in an exhibit to their petition. As previously discussed, the Vaughns filed an objection to the Commissioners' report. The Vaughns' objection can be fairly read as challenging the Commissioners' valuation of their "unique" real property located "adjacent to the Inland Waterway System" in that it failed to consider the "highest and best use" for that property. They also contended that the Commissioners were improperly instructed or failed to follow proper instructions to the extent that they assessed the value of the Vaughns' real property.

¶ 29 This is one of those areas in which strict adherence to the procedure established for railroad condemnation proceedings would not be "completely successful" in according the parties due process and their constitutional right to a judicial determination of the taking issue. *Williams*, 2000 OK CIV APP 19, ¶ 33, 998 P.2d at 1252. Prior to trial, the Vaughns withdrew their objection to the Commissioners' Report. Based on the procedure in eminent domain proceedings, the Vaughns had the right to do so. *Rowlett*, 1955 OK 254, ¶ 11, 288 P.2d at 729. We find nothing inconsistent in this eminent domain procedure and the procedure necessary to a proper resolution of inverse condemnation proceedings. Therefore, when the Vaughns withdrew their objection to the Commissioners' Report, they waived the right to a trial of such issues as the manner in which the Commissioners were instructed or the contents of the Commissioners' Report. As discussed in Part I of this Opinion, what the Vaughns did not waive was the right to a trial of the taking issue raised by the filing of their inverse condemnation petition. Therefore, with respect to that issue, we hold that after remand and at the trial of the taking issue consistent with this Opinion, the

---

8. Nor do we, as the parties have previously done, interpret the writ in Case No. 105,848 as prohib-

iting a jury trial with respect to the taking issue if one is requested. *See supra* note 7.

Vaughns may raise only the issues of whether a taking occurred and if so, what property was taken. Any adverse judgment on these issues may also be appealed. For the reasons previously stated, we do not address the scope of the Commissioners' award as to the property for which the Commissioners determined $1,952,682.00 was just compensation.

### B. The Pre–Judgment Interest Issue

¶ 30 The district court's judgment refused to award prejudgment interest to the Vaughns. We cannot, however, resolve any error in that ruling at this stage of the proceedings. For the reasons stated in Part I of this Opinion, the Vaughns have not yet established a taking of their property. If there was a taking, the Vaughns have not established what property was taken nor have they established the date of any taking from which prejudgment interest to which they might be entitled would be calculated. The Vaughns' appeal of the district court's judgment denying their request for pre-judgment interest is disposed of by our reversal of that judgment.

### CONCLUSION

¶ 31 In this inverse condemnation proceeding, the Vaughns' petition alleged that their property was taken by the City when it demolished structures located on their real property and removed personal property contained in the structures. Even in the absence of an objection to the Commissioners' Report or a demand for jury trial on the issue of damages, the City is entitled to a trial of that issue. At that trial, the Vaughns have the burden of proving that a taking of their property occurred and what property was taken. The only evidence the Vaughns offered in this record was a stipulation that the City had demolished structures and removed property located on their real property. That stipulation does not prove that their property was "taken" pursuant to the City's power of eminent domain because the stipulation does not eliminate the possibility that the demolition of the Vaughns' property resulted from a non-compensable exercise of the City's police power. Consequently, it was error to grant the Vaughns' motion for directed verdict based solely on the stipulation. This case is remanded for a trial of the taking issue consistent with this Opinion. And, consistent with this Opinion, the Vaughns may raise the pre-judgment issue in the district court.

¶ 32 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

GOODMAN, V.C.J., and WISEMAN, J., concur.